Filed 9/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSE C. CARDONA,<br><br>        Plaintiff and Appellant,<br>v.<br><br>KARINA SOTO,<br><br>        Defendant and Respondent. | A167089<br><br>(Contra Costa County<br>Super. Ct. No. MSD-11-00993) |

Jose Cardona appeals from a trial court order granting the request of Karina Soto, the mother of his child, for a domestic violence restraining order (DVRO) against him under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) (DVPA).[1]  The DVRO, which expired in November 2023, protected Soto and the parties' daughter (daughter).  We agree with Cardona that this appeal is not moot despite the DVRO's expiration, given that the underlying finding of domestic violence created a five-year statutory presumption against his custody of daughter.  We also conclude that his right to due process was violated when the court partially based its ruling on testimony daughter provided to it in an interview that was outside the

---

[1] All further statutory references are to the Family Code unless otherwise noted.

parties' presence and not reported or otherwise documented.[2]  As a result, we reverse.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Daughter was born in 2010 to Cardona and Soto, who never married each other, and Cardona initiated a paternity case in February 2011.  Later that year, the trial court entered a judgment of paternity, and the parties stipulated to joint legal and physical custody of daughter.

In October 2022, when daughter was 12 years old, Soto filed a request for a DVRO against Cardona on behalf of herself and daughter.  The request was prompted by an incident of domestic violence early on the morning of October 9 between Cardona and his current wife (wife) (October 9 incident).  According to the request, Cardona got drunk and beat wife in their home while daughter was present.  After daughter contacted another relative for help, Cardona slapped daughter's face and told her "she was a piece of shit."  The request stated that as a result of the incident, Cardona was arrested and wife, who was taken to the emergency room, obtained a restraining order against him.  The request also stated that Cardona verbally abused daughter on other occasions and had forced her to carry his gun.

Cardona filed a written opposition to the DVRO request.  He admitted that the October 9 incident occurred, but he stated that he was not currently facing charges and the restraining order had expired.  Otherwise, he denied Soto's other factual claims, stating that Soto was lying in an attempt to gain full custody of daughter.

_____

[2] In light of this conclusion, we need not address Cardona's other claims, including that the trial court erred by granting a DVRO protecting Soto.

2

At a contested hearing on November 29, 2022, Cardona and Soto both appeared in propria persona. Soto testified that on October 9, daughter was on an overnight visit with Cardona "when he completely lost it" and started beating wife. Daughter then texted a relative who lived nearby for help, and after that relative arrived Cardona "smacked" daughter, saying "she should be on his side because she is . . . his daughter, not . . . wife's." Daughter made an audio recording of the October 9 incident, which Soto offered to provide to the trial court. According to Soto, daughter was now "completely traumatized and [in] fear" and did "not want to see [Cardona] at all."

Soto also testified that "for years" Cardona had engaged in "emotional abuse" of daughter. Soto claimed that Cardona forced daughter to carry his loaded handgun on "multiple occasions," including most recently at a public event the day before the October 9 incident. Daughter had recently been seen for stomach pain, which her doctor indicated might be caused by her anxiety from visits with Cardona. Daughter was also scheduled to begin therapy. Although Soto sought a DVRO on her own behalf as well, she agreed with the trial court that her "main concern was the emotional and physical abuse of . . . daughter more than . . . [her]self."

Cardona admitted that he had "one bad altercation" with wife during which he was "blacked-out" drunk. Although he could not remember the October 9 incident, including whether he slapped daughter, he indicated that he would never hit her because he loved her. He had been sober since the incident, was taking anger-management classes, and had turned in his guns. He denied any ongoing physical or emotional abuse of daughter. He also specifically denied having daughter carry a gun for him, stating that she handled a gun only when "she was getting proper training [on] how to use it" from a law enforcement officer he knew.

3

The trial court indicated that although everyone agreed there was an incident between Cardona and wife that "distressed" daughter, the other reported behavior was "he said/she said." When the court asked Soto what other evidence she had, she said that daughter could testify. The court then continued the hearing to the following day, indicating that it also had to decide whether to "hear [daughter's] audio or not."

Daughter attended the continued hearing. At the outset of the hearing, the trial court asked whether she was present. Soto then inquired, "Does she talk to you public[ly] or talk to you privately? How does that work? I'm unclear." The court responded, "I'll talk to her in my office." The reporter's transcript reflects that the court and daughter then had "an in-chambers discussion not reported."

When the trial court went back on the record, it told the parties, "I am not going to talk to you about things that I learned from [daughter] except to say that I did hear the recording that happened . . . when [Cardona] and [wife] were having [their] domestic violence issues. It's pretty awful[,] especially for a 12-year-old to listen to."[3] The court gave the parties an opportunity to comment before it ruled, leading to an extended back-and-forth between Cardona and Soto about their respective views of the situation. Although the court did not say much during this discussion, it alluded to things daughter said in-chambers, such as by reporting that it had "confirmation of the slapping." The court also told Cardona, "[Y]ou seem to think everything is just perfect, sir, believe me[,] things are not perfect from your daughter's standpoint."

_____

[3] Our record contains two audio recordings, each of which is about two minutes long. They tend to corroborate daughter's description of the October 9 incident, as relayed by Soto.

The trial court then granted a one-year DVRO protecting both Soto and daughter. Soto was also granted sole legal and physical custody, and Cardona was denied visitation.

II.

DISCUSSION

A. *The Appeal Is Not Moot Despite the DVRO's Expiration.*

After Cardona filed his opening brief, Soto sought an extension of time to file her respondent's brief in which she noted that the DVRO had expired. In response, this court asked Cardona to submit a supplemental letter brief addressing whether the appeal should be dismissed as moot. He did so, arguing that the appeal is not moot because the trial court's finding of domestic violence created a rebuttable presumption under section 3044 that he not be awarded physical or legal custody of daughter for five years. We agree that the appeal is not moot.

The DVRO expired on November 30, 2023, during the pendency of this appeal. Generally, we do not decide cases that have become moot, which occurs " 'when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief." ' " (*Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485.) An appeal from an expired order is not moot, however, if it "could have consequences for [a party] in . . . future court proceedings." (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 209.)

Section 3044 provides that "[u]pon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against" specified parties, including the child, "there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . . This presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).)

5

" 'Because a DVPA restraining order must be based on a finding that the party being restrained committed one or more acts of domestic abuse, a finding of domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044.' " (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 736.) The presumption is mandatory, and it "remains in effect for five years regardless of whether an underlying domestic violence restraining order has expired." (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661, 665–666.)

We agree with Cardona that this appeal is not moot because the "section 3044 presumption will endure through November 30, 2027," even though the challenged DVRO has expired. Thus, the DVRO will have consequences for him in future proceedings involving custody of daughter. In arguing that the appeal *is* moot, Soto emphasizes that the presumption is rebuttable. She claims that as a result, Cardona "is not being deprived of a right or benefit conferred by law; instead, he is merely subject to the speculative, future potential harm" that might ensue if "he is not able to overcome the presumption by a mere preponderance of the evidence that awarding him some custody is not 'detrimental to the best interest of the child.' " (Italics omitted.) Although we agree that the presumption will not *necessarily* prevent Cardona from gaining custody of daughter, it will impede his ability to do so in future proceedings. In light of this concrete legal consequence, we could provide him with effective relief by reversing the DVRO, and the appeal may therefore go forward.

### B. Cardona's Right to Due Process Was Violated Because He Was Deprived of the Ability to Respond to Daughter's Testimony.

Cardona claims that he was denied due process when the trial court conducted an unreported, in-chambers interview of daughter. We agree. Although a court may validly obtain testimony from a minor outside a

6

parent's presence, the procedure used here failed to apprise Cardona of daughter's testimony or provide him with a meaningful opportunity to respond to it.

Initially, Soto argues that Cardona forfeited this claim by not objecting to the trial court's in-chambers interview of daughter. "A claim of error on appeal may be deemed forfeited if the objection was not raised in the trial court. [Citation.] However, ' "application of the forfeiture rule is not automatic[,]" ' . . . [and w]hen a party raises an important constitutional claim, we may exercise our discretion to consider its merits." (*In re N.R.* (2023) 87 Cal.App.5th 1187, 1199.) Here, although Cardona never objected to the way in which the trial court interviewed daughter, his claim presents a serious issue of due process impacting his custody of and contact with her. Thus, we decline to apply the forfeiture rule and will consider the claim on the merits.

A trial court may issue a DVRO upon "reasonable proof of a past act or acts of abuse," but only "after notice and a hearing." (§§ 6300, subd. (a), 6340, subd. (a); *In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 934.) "Due process requires 'the right to be heard in a meaningful manner.' [Citation.] 'A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses.' " (*In re Marriage of D.S.*, at p. 935.) "In a contested restraining order hearing, the trial court is tasked with protecting the fundamental due process rights of self-represented litigants both seeking a restraining order or defending against the request, even when they do not fully understand what those rights encompass." (*Id.* at p. 934.)

These due process rights were heightened here because of this proceeding's implications for Cardona's parental rights, including section 3044's rebuttable presumption that granting custody of a child to a

parent against whom a DVRO has been issued is against the child's best interest. " 'The fundamental and crucial right to "conceive and raise one's children" is protected by due process guarantees. [Citations.] "[T]he interest of a parent in the companionship, care, custody, and management of [the parent's] children is a compelling one, ranked among the most basic of civil rights [citations], [and] the state, before depriving a parent of this interest, must afford [the parent] adequate notice and an opportunity to be heard." ' " (*In re Amy M.* (1991) 232 Cal.App.3d 849, 864.) We review due process claims de novo, "because 'the ultimate determination of procedural fairness amounts to a question of law.' " (*In re Jonathan V.* (2018) 19 Cal.App.5th 236, 241.)

We begin by recognizing and appreciating the trial court's evident concern for daughter's well-being. "[T]he state[ has a] compelling interest in protecting child witnesses from trauma" that could result from testifying in open court. (*People v. Lujan* (2012) 211 Cal.App.4th 1499, 1505.) In light of this interest, it can be challenging for trial courts to determine whether and how best to hear from child witnesses, and there is no one-size-fits-all procedure: Courts must balance on a case-by-case basis the need to protect the child with other relevant considerations, including the parties' due process rights.

We also recognize that the trial court's interview of daughter outside the parties' presence did not in and of itself violate due process. In-chambers testimony by minors is explicitly authorized in other contexts. In dependency proceedings, for example, "[t]he testimony of a minor may be taken in chambers and outside the presence of the minor's parent or parents, if the minor's parent or parents are represented by counsel, the counsel is present," and an enumerated circumstance exists, including that "[t]he minor is afraid to testify in front of [the] parent or parents." (Welf. & Inst. Code, § 350,

8

subd. (b).) This statutory procedure has been upheld against due process challenges. (*In re Amy M.*, *supra*, 232 Cal.App.3d at pp. 866–867.)

As another example, a trial court "making an order granting or modifying custody or visitation" in a family-law case is *prohibited* from allowing a child to express "a preference as to custody or visitation" in the parties' presence, unless the court finds it would be in the child's best interest. (§ 3042, subds. (a), (f).) Soto claims that section 3042 applies here "because not only was the [trial] court considering a request for modification of child custody orders, but also because [daughter's] preferences on custody were inextricably intertwined with the abuse she suffered at the hands of her father." We are not convinced that Soto is correct, as the court's primary purpose in interviewing daughter was to obtain evidence about Cardona's past behavior, not make a custody or visitation determination. Still, the statute supports our conclusion that the court's interview of daughter did not violate due process just because it was conducted outside Cardona's presence.

We agree with Cardona, however, that the trial court's failure to have the interview reported or to otherwise inform him of the substance of what daughter said "fundamentally deprived him of the ability to rebut or explain [the] evidence the trial court considered and relied upon" in issuing the DVRO. The statutory procedures discussed above for taking a child's testimony outside a parent's presence have safeguards to ensure that the parent may respond to such evidence. In dependency proceedings, if a minor testifies in chambers, "the parent or parents of the minor may elect to have the court reporter read back the testimony or have the testimony summarized by counsel for the parent or parents." (Welf. & Inst. Code, § 350, subd. (b).) Similarly, if a court hears from a child in chambers about custody or visitation under section 3042, it must consider "[w]hether a court reporter

9

is available in all instances, but especially when testimony may be taken outside the presence of the parties and their attorneys and, if not, whether it will be possible to provide a listening device so that testimony taken in chambers may be heard simultaneously by the parents and their attorneys in the courtroom or to otherwise make a record of the testimony." (Cal. Rules of Court, rule 5.250(e)(3)(D).)  These requirements clearly contemplate that *some* record will be made of a child's testimony outside the parent's presence, which will in turn be shared with the parent.

Here, in contrast, the trial court made no provision to enable Cardona to respond to daughter's testimony.  A court reporter was present transcribing the hearing at issue, so it appears the in-chambers interview could have also been reported.  Though Cardona did not have counsel who could have observed daughter's interview for him, the court could have summarized daughter's testimony for the record.  Nor did the court make any findings that could conceivably support its refusal to reveal anything daughter said.  Moreover, the failure to make any record of daughter's testimony left the evidentiary basis for the DVRO essentially unreviewable on appeal.  (See *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 933–935 [trial court's failure to settle statement of unreported hearing "effectively deprived [appellant] of the right to appeal"].)  Under all these circumstances, we conclude that the court's procedure for obtaining daughter's testimony violated due process.

We therefore turn to the issue of prejudice.  Generally, "[t]he failure to accord a party litigant [the] constitutional right to due process is reversible per se, and not subject to the harmless error doctrine." (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 293.)  Even assessing the error under the state-law standard, as Soto argues we should, we conclude that there is a

reasonable probability Cardona would have obtained a more favorable outcome had the error not occurred. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) The trial court's comments in granting the DVRO request make clear that its ruling rested at least in part on daughter's testimony. Cardona may not have challenged daughter's testimony about the October 9 incident, since he admittedly did not remember what happened. But it is possible that the trial court elicited information from daughter about other matters to which Cardona could have responded, such as Soto's claim that he made daughter carry a gun. In short, because Cardona was deprived of the opportunity to respond to evidence affecting the court's ruling, reversal is required.

Had the DVRO not yet expired, the appropriate remedy would be to remand for a new hearing. As far as we are aware, however, Soto has not sought to renew the order. Although we must reverse the order because it was based on testimony obtained in violation of Cardona's right to due process, we emphasize that our opinion does not preclude future reliance on the other evidence of domestic violence presented. We express no opinion on what effect, if any, that evidence might have in further proceedings, including custody determinations.

## III.
### DISPOSITION

The November 30, 2022 DVRO is reversed. Cardona is awarded his costs on appeal.

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Siggins, J.*

*Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

_Cardona v. Soto_  A167089

Trial Court:  Contra Costa Superior Court

Trial Judge:  Hon. Judith S. Craddick

Counsel:

The Doyle Law Firm, Aaron E. Doyle, for Plaintiff and Appellant.

Roehn Law Offices LLP, Derrick Roehn, Kimberly Roehn, for Defendant and Respondent.

*Cardona v. Soto*  A167089